## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 13-70334-JAD |
| | ) | |
| BG PETROLEUM, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| —————————————————X | | |
| | ) | Adversary No. 19-07014-JAD |
| THE ESTATE OF BG PETROLEUM, | ) | |
| LLC BY AND THROUGH THE | ) | Related to ECF No. 354 |
| CHAPTER 7 TRUSTEE, LISA M. | ) | |
| SWOPE, and TIMCO, LTD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| COMMUNITY STATE BANK OF | ) | |
| ORBISONIA, PHILIPPIANS PLACE, | ) | |
| LLC, BWEX16509, LLC, | ) | |
| BWWORFORD, LLC, BWSUN16490, | ) | |
| LLC, GERALD DEVER, DANIEL & | ) | |
| DEWEY, LP, McANENY | ) | |
| BROTHERS, INC., and EAST | ) | |
| PROVIDENCE TOWNSHIP, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————X | | |

### <u>MEMORANDUM OPINION</u>

The matter before the Court is the *Defendant Community State Bank of Orbisonia's Motion to Dismiss Fourth Amended Adversary Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) as Incorporated Into Bankruptcy Rule 7012* (the "<u>Motion to Dismiss</u>," ECF No. 354).[1] For the reasons stated below, the Court

---

[1] The caption of this *Memorandum Opinion* has been amended from that of the Motion to Dismiss to reflect the removal of certain parties as directed by the *Order of Court* dated September 29, 2021. <u>See</u> ECF No. 368 at 4 ¶ 2.

will issue an *Order* dismissing the Plaintiff's *Fourth Amended Adversary Complaint* (the "Complaint," ECF No. 283) as to Defendant, Community State Bank of Orbisonia.

## I.

The Motion to Dismiss is a core proceeding over which this Court has the requisite subject matter jurisdiction to enter final judgment pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1) and 157(b)(2)(H).

## II.

The facts and history of the adversary proceeding are substantial. As this Court writes primarily for the benefit of the parties to the Motion to Dismiss, the Court presumes familiarity and will only set forth those allegations contained within the Complaint that are necessary for resolution of the Motion to Dismiss.

The above-captioned adversary proceeding was commenced by the Plaintiffs, the Estate of BG Petroleum by and through the Chapter 7 Trustee, Lisa M. Swope (the "Trustee"), and Timco, Ltd. ("Timco," and together with the Trustee, the "Plaintiffs") on August 8, 2019.

On May 18, 2021, the Plaintiffs filed their *Fourth Amended Adversary Complaint*, wherein Defendant, Community State Bank of Orbisonia ("CSB") was named as a defendant in this action for the first time.

The claims asserted against CSB in the Complaint include: (a) at Count III, fraudulent transfer under 11 U.S.C. § 549 [sic][2]; (b) at Count IV, fraudulent

---

[2] As discussed below, the Plaintiffs assert a claim relating to "fraudulent transfer under 11 U.S.C. § 549." However, section 549 pertains to "postpetition transactions," whereas section 548 addresses "fraudulent transfers and obligations."

transfer under 12 Pa. Cons. Stat. § 5104(a)(1); (c) at Count V, violation of 18 U.S.C. § 1962(a); (d) at Count VII, violation of 18 U.S.C. § 1962(c); (e) at Count VIII, violation of 18 U.S.C. § 1962(d)[3]; (f) at Count X, civil conspiracy; and, (g) at Count XI, concerted action.

The "RICO" claims against CSB (i.e. Counts V, VII, and VIII, asserting violations under 18 U.S.C. §§ 1962(a), (c), and (d)) have since been stipulated as dismissed.

The allegations against CSB primarily stem from two refinancing transactions specific to real property located at 720 Lincoln Highway, McConnellsburg, Pennsylvania (the "Lincoln Highway Property")[4] and 201 North Jefferson Street, Mount Union, Pennsylvania (the "Jefferson Street Property")[5]. At the time of the

---

[3] In the Complaint, the Plaintiffs label this count as "Count XIII" instead of "VIII." Given the numerical sequencing of the counts, this appears to be a typo.

[4] As with many things in this case, the correct address of this property is not entirely straightforward. In the averments of the Complaint, the Plaintiffs identify the property as "720 Lincoln Highway, McConnellsburg, PA." See Complaint ¶¶ 127(d), 142 &143. However, in the documents comprising the October 16 Report of Sale (Exhibit 10 to the Complaint) referenced in paragraph 127, the property is identified as having an address of "720 Lincoln Way," and also "720 Lincoln Way East." See Complaint, Ex. 10 at 161 & 168 § G. The documents provided relating to the refinancing also list the property as "720 Lincoln Way East" (see Complaint, Ex. 15 at 439, Ex. 16 at 441, 445 & 446, and Ex. 17 § G). As neither party raised any issue regarding the multiple identifiers, the Court will presume for the limited purposes of this *Memorandum Opinion* that the multiple addresses refer to the same property.

[5] In the Complaint, the Plaintiffs use both the address of "201 North Jefferson Street, Mount Union, PA" (see Complaint ¶ 127(c)) and "201 Jefferson Street, Mount Union, PA" (see Complaint ¶¶ 145-146). The Court notes that the documents attached as exhibits relating to the refinancing utilize the address of "201 North Jefferson Street." See Complaint, Ex. 18 at 455, Ex. 19 at 457, and Ex. 20 § G.

refinancings, the properties were owned by 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC, respectively. <u>See</u> Complaint ¶¶ 127(c) & (d).[6]

It is alleged that the refinancing transactions were initiated by William Miller, on behalf of 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC, and that the cash proceeds of the transactions were later used for the benefit of the "Bedford Defendants."[7] The Plaintiffs allege that the purpose of refinancing was to drain the properties of equity to make them unappealable for judgment execution. <u>See</u> Complaint ¶¶ 150-151. Moreover, that CSB "conspired with, abetted, acted in concert with, participated in, and aided in the Scheme," [8] or alternatively, that CSB "knew or should have known of the instant Adversary Action" prior to the refinancing transactions.

CSB filed its Motion to Dismiss and supporting brief (the "<u>Brief</u>," ECF No. 354-2) on September 8, 2021. Plaintiffs filed their response in opposition to the Motion to Dismiss on September 24, 2021. <u>See</u> Response in Opposition to Motion

---

[6] All rights possessed by 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC to the Lincoln Highway Property and the Jefferson Street Property have since been transferred to the Plaintiff, Estate of BG Petroleum, LLC, pursuant to the *Order of Court* dated September 29, 2021. <u>See</u> ECF No. 368 at 1-2, ¶¶ 1& 2.

[7] The "Bedford Defendants" as defined in the Complaint consist of "William Miller, Attilio DeMarco, Diane DeMarco, the Miller Family Defendants, and the M/D Entity Defendants." The "Miller Family Defendants" included Mary Miller, William J. Miller, III, Michael Kenan Miller, Jennifer Hurdle Miller, and Matthew O'Brien Miller. The "M/D Entity Defendants" are defined to include: Breezewood Venture, LLC; Bedford Holdings, LLC; MW Family Holdings, LLC; DeMarco Famiglia Holdings, LLC; PA HR Services, LLC; Breezewood Enterprises, LLC; Bedford UST Holding Company, LLC; 4355 Business 220, LLC; 720 Lincoln Highway, LLC; 201 Jefferson Street, LLC; Bedford Asset Leasing Company, LLC; Breezewood Leasing Company, LLC; and Tristar Petroleum, LLC. <u>See</u> Complaint ¶¶ 13, 29. The claims against each of the "Bedford Defendants" have since been settled and by *Order of Court* dated September 29, 2021 the above caption has been amended to exclude them. <u>See</u> Order 4, ¶2, ECF No. 368.

[8] "Scheme" is defined in paragraph 51 of the Complaint.

to Dismiss ("<u>Response</u>"), ECF No. 363. A hearing was thereafter held on September 28, 2021.

## III.

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 12(b), provides that complaints may be dismissed for "failure to state a claim on which relief can be granted."

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955); <u>see also</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)(applying <u>Twombly</u> standard to *pro se* complaint).

Determining whether a claim for relief is plausible is a "context-specific task" requiring the court to "draw on its judicial experience and common sense." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679, 129 S.Ct. 1937 (citing <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157–58 (2d Cir. 2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id</u>. at 678, 129 S.Ct. 1937.

Additionally, the court need not accept as true bald assertions (or bald conclusions or inferences), legal conclusions couched or masquerading as facts, or conclusions contradicted by the complaint's own exhibits or other documents of which the court may take proper notice. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008); Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(the court is not obligated to "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited").

Specific to the allegations of fraudulent transfer in this case, the Court notes that Federal Rule of Civil Procedure 9(b), made applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7009, dictates that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  However, these requirements are "relaxed and interpreted liberally" where the party asserting fraudulent transfer claims is the trustee. See Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.), 405 B.R. 527, 544 (Bankr. D. Del. 2009)("The requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee, or trust formed for the benefit of creditors, as here, is asserting the fraudulent transfer claims, however. . . . This is because of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.' " (citations omitted)).

### a. Count III, Fraudulent Transfer Under 11 U.S.C. § 549

11 U.S.C. § 549

The heading of the section of averments constituting Count III reads "Fraudulent Transfer Under 11 U.S.C. § 549." Section 549 permits a trustee to avoid a "transfer of property of the estate" which occurred after the commencement of the case and which is either "authorized only under section 303(f) or 542(c) of [Title 11]" or "is not authorized under this title or by the court." See 11 U.S.C. § 549(a).

Although the heading directly references 11 U.S.C. § 549, whether the Plaintiffs intended to assert a claim thereunder or whether the heading contains a typo is uncertain based on a reading of the Complaint alone. This is because although the heading cites section 549, there is no further citation or allusion to that section in the averments set forth under Count III. Instead, the "meat" of the Count III averments alleges fraudulent transfer under 11 U.S.C. § 548(a). Specifically, the Plaintiffs write in paragraph 167 that "11 U.S.C. § 548(a) allows the bankruptcy trustee to avoid certain transfers of interests in property where such transfers were made with the knowing and actual intent to defraud a creditor of a debtor or where the amounts received are less than the equivalent value of the property." Complaint ¶ 167. The other averments under Count III largely cite to a knowing and intentional act by one or more of the defendants, thus seemingly referring to section 548. See e.g. Complaint ¶¶ 168-171. Moreover, the very heading in which the Plaintiffs cite section 549 seems to be at conflict with itself. As noted, the heading reads "Fraudulent Transfer Under

11 U.S.C. § 549," however section 549 does not concern fraudulent transfers, nor is there any requirement that "fraud" be shown for relief thereunder. See generally 11 U.S.C. § 549. Instead, section 549 concerns "Postpetition transactions," while section 548 addresses "Fraudulent transfers and obligations."

The confusion as to whether the Plaintiffs are proceeding under section 548 and/or section 549 was noted in CSB's Brief at footnote 3. For their part, the Plaintiffs argue that the Trustee may exercise her powers under either section 548 or section 549. See Response 3.

However, to the extent that the Plaintiffs do seek relief under section 549, the Court finds that the Complaint fails to state a claim for relief thereunder. Significantly, the only reference to section 549 is in the Count III section heading and there is no numbered paragraph averring liability under section 549. The Plaintiffs also fail to identify the elements required to prove a claim under section 549. Thus, the Plaintiffs do not even provide a "threadbare recital[ ] of the elements" that alone would be insufficient to establish a claim under 11 U.S.C. § 549. See Ashcroft v. Iqbal, 556 U.S. at 678. As to factual allegations, there is no averment of fact identifying the "property of the estate" allegedly transferred specific to CSB. Nor is there a factual averment that the alleged transfer was either "authorized only under section 303(f) or 542(c) of [Title 11]" or was not authorized under the Bankruptcy Code or by this Court at all. See 11 U.S.C. §

8

549(a)(2)(A) & (B).[9] Thus, the Plaintiffs have failed to state a claim for relief under 11 U.S.C. § 549.

<u>11 U.S.C. § 548(a)</u>

Turning next to Count III through the lens of 11 U.S.C. § 548(a).

Section 548(a) of Title 11 permits the trustee to avoid certain transfers "of an interest of the debtor in property, or any obligation . . . incurred by the debtor, ***that was made or incurred on or within 2 years before the date of the filing of the petition*** . . . ." <u>See</u> 11 U.S.C. § 548(a)(1) (italics and emphasis added).[10]

By the express terms of the statute, the transfer to be avoided pursuant to 11 U.S.C. § 548(a) must have occurred on or within two years *before* the date of the filing of the petition. <u>See</u> 11 U.S.C. § 548(a)(1).

In this case, a chapter 11 involuntary petition was filed against the Debtor in the underlying bankruptcy case, BG Petroleum, LLC, on May 3, 2013. An *Order for Relief Under Chapter 11* was entered by the Court on April 9, 2014, and the case was ultimately converted to one under chapter 7 of the Bankruptcy Code on July 19, 2018.

While the Complaint alleges numerous transfers which are incorporated into Count III by the statement "Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein[,]" (Complaint ¶ 166), the transfers pled as

---

[9] Outside of the refinancings, the Plaintiffs did aver that certain transactions were made without disclosure to this Court. <u>See e.g.</u> Complaint ¶¶ 116, 117 & 124.

[10] Although the Complaint references 11 U.S.C. § 548(a) generally, section 548(a)(2) concerns charitable contributions to a "qualified religious or charitable entity or organization" and does not appear to be relevant *sub judice.*

involving CSB occurred on January 9, 2020. See Complaint ¶ 171. These transfers are related to the "refinancing and equity cash-outs" for the Lincoln Highway Property and the Jefferson Street Property.

Because the transfers occurred *after* the entry of the *Order for Relief Under Chapter 11*, and even after the case's conversion on July 19, 2018, relief under 11 U.S.C. § 548(a) is unavailable. See Williams v. Mortillaro (In re Res., Recycling & Remediation, Inc.), 314 B.R. 62, 68 (Bankr. W.D. Pa. 2004) (finding that the chapter 7 trustee cannot use 11 U.S.C. § 548(a)(1)(A) to avoid a transfer which occurred after the filing of the involuntary petition and order for relief).[11]

Thus, the Plaintiffs have failed to state a claim for which relief can be granted under 11 U.S.C. § 548(a).

Moreover, to the extent that the Plaintiffs may aver that CSB was involved in the earliest of the transfers pursuant to their alleged engagement in the overall "Scheme," the "First Transaction" as denoted in the Complaint occurred in early 2017. See Complaint 15 & ¶ 84. This is well after the filing of the petition and entry of the order for relief.

Thus, the Plaintiffs have failed to state a claim for which relief can be granted.

---

[11] Section 548(a)(1) was amended on April 20, 2005 to extend the look-back period for transfers from one to two years. See BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005, PL 109–8, April 20, 2005, 119 Stat 23.

### b.    Count IV, Fraudulent Transfer Under 12 Pa.C.S. § 5104(a)(1)

In addition to asserting fraudulent transfer under the Bankruptcy Code, the Plaintiffs also name CSB as a defendant to a claim of fraudulent transfer under the Pennsylvania Uniform Voidable Transactions Act (the "PUVTA", 12 Pa. Cons. Stat. § 5101, et seq.). Specifically, the Plaintiffs cite section 5104(a)(1) of the PUVTA which states that:

> (a) General rule.--A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay or defraud any creditor of the debtor

12 Pa. Cons. Stat. § 5104(a)(1).

The remedies for an aggrieved creditor under the PUVTA are set forth in section 5107, which make such remedies subject to the limitations of section 5108.  Section 5108(b) provides that:

> (b) Judgment for certain voidable transfers.--To the extent a transfer is avoidable in an action by a creditor under section 5107(a)(1) (relating to remedies of creditor), the following rules apply:
>
> (1) Except as otherwise provided in this section, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
>> (i) the first transferee of the asset or the person for whose benefit the transfer was made; or
>>
>> (ii) an immediate or mediate transferee of the first transferee, other than:
>>
>>> (A) a good faith transferee that took for value; or

(B) an immediate or mediate good faith transferee of a person described in clause (A).

(2) Recovery under section 5107(a)(1) or (b) of or from the asset transferred or its proceeds, by levy or otherwise, is available only against a person described in paragraph (1).

12 Pa. Cons. Stat. § 5108(b).

Thus, when seeking to avoid a transfer under section 5104, a creditor is limited by sections 5107 and 5108 to judgment against the first transferee, an immediate or mediate transferee, or the person for whose benefit the transfer was made. Because recovery is limited to certain persons based on their exact relationship to a transfer, precise identification of the transfer to be avoided is necessary to facilitate a determination of who is and who is not liable for judgment.

Unfortunately, such precise identification is not pled in the Complaint. In that, there is no concise and direct statement to the effect of "the transfers at issue consist of . . . ." Instead, the Plaintiffs aver in Count IV, paragraph 182 of the Complaint that:

182. After litigation was initiated, William Miller and Attilio DeMarco knowingly and intentionally conspired with the Community State Bank of Orbisonia to remove the equity in whatever holdings they could via refinancing and equity cash-outs in the amounts of:

a. $199,857.11 paid to 720 Lincoln Highway, LLC which were depleted shortly after the payment of the January 9, 2020 refinancing proceeds to the benefit of the Bedford Defendants; and

b. $76,611.96 paid to 2[0]1 Jefferson Street, LLC which were depleted shortly after the payment of the January 9, 2020 refinancing proceeds to the benefit of the Bedford Defendants.

The Plaintiffs then demand in their "wherefore" clause for Count IV that the "above transfers be avoided, or otherwise vacated, and to have all funds related thereto, or derived therefrom, be deposited in the Bankruptcy Estate . . . ." See Complaint 32-33.

Thus, the relevant "transfers" appear to be the "equity cash-out" payments directly referenced in paragraph 182.

Complicating this matter (or attempting to complicate this matter) however, is the manner in which the Complaint was generally pled. The Plaintiffs structured their Complaint in a format loathed by this Court. Whereby, the Plaintiffs set forth extensive and complicated allegations of fact in a "Background" section. Then, under each count the Plaintiffs incorporate all the averments of the "Background" section through a one sentence averment. The Plaintiffs then set forth generally conclusory statements averring liability for the respective causes of action—sometimes without reference to the specific allegation(s) of fact that support each separate count. See Count X.

The effect of this structure and the averment incorporating all prior paragraphs is to create a kind of "kitchen sink" argument. By that, the Plaintiffs technically put all of the factual averments before the Court for each claim without always providing an explanation of which alleged actions give rise to each claim for relief under each count. In doing so, the Plaintiffs shift the burden of piecing their arguments together to the defendants and the court. This is especially true in the context of a motion to dismiss, where the court must

assume the veracity of well-pled factual allegations and determine whether they "plausibly" give rise to a right to relief.

Nonetheless, while the Court must give credence to all well-pled factual allegations and assess whether a right to relief is "plausible," it is not the court's job to parse through the Complaint and guess as to which facts the Plaintiffs could be relying on to assert each claim.[12]  The Court is not a mind-reader or a soothsayer, and such action could result in the court creating arguments not intended by a plaintiff.

Nor would it be appropriate for the court to do so even under less stringent *pro se* pleading standards, of which it has been observed that "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading.' " Barrow v. Westrock, Inc., No. 1:19-cv-1089, 2021 WL 122985, at *2 (S.D. Ohio Jan. 13, 2021)(quoting Brown v. Matauszak, 415 F.App'x 608, 615 (6th Cir. 2011)(citation omitted)). See also Harris v. Trs. of Conneaut Lake Park, Inc. (In re Trs. of Conneaut Lake Park Inc., 563 B.R. 784, 790 (Bankr. W.D.Pa. 2017)(observing that while the court analyzes a *pro se* complaint under a relaxed, liberal standard, the court is not required to assume the role of the plaintiff's advocate).

Accordingly, this Court will only view the adequacy of the Plaintiffs' fraudulent transfer claim with respect to the transfers explicitly stated as

---

[12] The Complaint *sub judice* is not insignificant in size. The Plaintiffs name thirty-one defendants, whose alleged actions are described over 114 "background" averments (some with multiple subsections). The Plaintiffs also attach to the Complaint 463 pages of exhibits.

involving CSB under Count IV—the equity cash-out payments related to the Jefferson Street Property and the Lincoln Highway Property.

In view of the equity cash-out payments themselves, however, the Plaintiffs have failed to state a claim against CSB for which relief can be granted. This is because CSB is the "transferor" of the monies constituting the equity cash-out payments and 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC, as recipients of the funds—i.e. the parties "paid" per the Plaintiffs' own averment— are the respective "transferees."[13] Indeed, the Settlement Statements for the refinancing transactions attached to the Complaint as Exhibits 17 and 20, show at line 303 cash to the borrowers, identified as 720 Lincoln Highway, LLC in the amount of $199,857.11, and 201 Jefferson Street LLC in the amount of $76,611.96.

Since Plaintiffs are not entitled to recovery against a transferor in connection with avoidance of a transfer under section 5104 of the PUVTA, the Plaintiffs have failed to state a claim as to the equity cash-out payments.

This should conclude the Court's analysis of the Plaintiffs' Count IV. However, in the Plaintiffs' Response to the Motion to Dismiss, the Plaintiffs argue that CSB is a transferee due to its receipt of first lien mortgages on the Lincoln

---

[13] Although the accounts the funds were allegedly placed into were with CSB, the accounts belonged to 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC. See Complaint §§ 148 & 149. As account owners those entities were able to exercise dominion and control over the funds and were thus the transferees of the equity cash-out payments. See Bonded Fin. Servs., Inc. v. Eur. Am. Bank, 838 F.2d 890, 893-894 (7th Cir. 1988)(discussing who is a "transferee" under 11 U.S.C. § 550). As noted in the "Uniform Law Comments" to 12 Pa. Cons. Stat. § 5108, subsection (b) is derived from 11 U.S.C. § 550. See 12 Pa. Stat. and Cons. Stat. Ann. § 5108, cmt. 2.

Highway Property and Jefferson Street Property, which they claim are subject to avoidance. See Response 3. Notably, there is no mention of the liens in the main document of the Complaint. This is supported by the Plaintiffs' statement in their Response that they pled facts concerning CSB's receipt of liens "by and through the Exhibits attached [to the Complaint]." See Response 3. The liens were also discussed on the record at the hearing held on the Motion to Dismiss on September 28, 2021.

In ruling on a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Courts may also consider an "undisputedly authentic document" attached by a defendant to a motion to dismiss if the plaintiff's claims are based on that document. Id. Thus, matters raised outside of the Complaint itself or not incorporated therein should not be considered.

While the Plaintiffs have failed to explicitly aver the transfer of liens in the numbered paragraphs of the Complaint, the Court does observe that included in the exhibits attached to the Complaint are term letters issued by CSB in relation to the refinancing of loans for 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC. See Complaint, Exs. 16 & 19. Within the "SECURITY" section of each of the letters is a checked box indicating that a first lien mortgage on the respective properties will be part of the securities for the refinancings. However, no security agreements relating to the refinancings are included in the exhibits.

Thus, the question is whether this is sufficient to give CSB fair notice of Plaintiffs' claims relating to the liens and the grounds upon which they rest. <u>See</u> <u>Twombly</u>, 550 U.S. at 555.

The Court finds that it does not.

The fact of the matter is that there is no well-pled factual averment alleging the transfer of the liens.

While the Plaintiffs attempt to cover their omission by averring that the liens were pled "by and through the Exhibits attached" to the Complaint, the Court does not agree. Although the Court must consider the exhibits when deciding a motion to dismiss, a plaintiff may not attach an exhibit to a complaint and later argue that any and all legal theories that could be derived from an examination of the exhibit have been properly raised.  Again, it is not the job of a defendant (or the court) to scour the averments of a complaint and exhibits attached and tease out every legal basis that could be derived therefrom in preparation of a defense. The very point of requiring a well-pled complaint is to put the parties—an indeed the court—on notice of what is being alleged.

Nonetheless, even if this Court were to find that the liens were sufficiently identified as transferred property subject to avoidance either through the exhibits, or by the references to "equity" being cashed out or drained, the Plaintiffs' claim for relief under Count IV would still fail because the Plaintiffs are

not "creditors" of the transferors of the liens—720 Lincoln Highway, LLC and 201 Jefferson Street, LLC.[14]

As set forth above, section 5104 of the PUVTA makes certain transfers by a debtor "voidable as to a *creditor*." <u>See</u> 12 Pa. Cons. Stat. § 5104(a)(italics added). Likewise, avoidance of a transfer under the PUVTA may be obtained by "a *creditor*" pursuant to section 5107(a)(1). <u>See</u> 12 Pa. Cons. Stat. § 5107(a)(italics added). Accordingly, to bring a claim for relief thereunder, the Plaintiffs must be "creditors" within the context of the PUVTA.

Under the PUVTA, a "creditor" is defined as "[a] person that *has* a claim." <u>See</u> 12 Pa. Cons. Stat. § 5101 (italics added). A "claim" is broadly defined as "[e]xcept as used in 'claim for relief,' a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." <u>Id</u>.

*Sub judice*, the Plaintiffs listed both 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC as defendants to the Complaint. The claims asserted against 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC therein included: (a) fraudulent transfer under 11 U.S.C. § 549 [sic] (as a Bedford Defendant); fraudulent transfer under 12 Pa.C.S. § 5104(a)(1) (as a Bedford Defendant); violation of 18 U.S.C. §§ 1962(a), (c), and (d) (as a Bedford

---

[14] As set forth in the letters attached to the Complaint as Exhibits 16 and 19, the borrowers who granted the liens to CSB pursuant to the refinancing transactions were 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC.

Defendant); civil conspiracy (as a Bedford Defendant); and a demand for turnover of estate property (as an M/D Entity Defendant).

For the limited purposes of this *Memorandum Opinion*, the assertion of these claims arguably made the Plaintiffs "creditors" of 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC under the PUVTA. See Baker v. Geist, 321 A.2d 634, 636 (Pa. 1974)(observing that under the Uniform Fraudulent Conveyance Act appellant was a creditor[15] of appellee at the time of alleged fraudulent transfers where transfers occurred after accident involving parties, during period where appellant's attorney had contacted appellee with offer to settle claim, but prior to institution of action in tort); see also City of Philadelphia v. Stepan Chemical Co., 713 F.Supp. 1491, 1492 n. 3 (E.D. Pa. 1989)(applying Uniform Fraudulent Conveyance Act, finding that mere allegations do not constitute a claim, "absent some legal foundation, such as an underlying debt, a contract, or a lawsuit properly filed and served.")

However, on June 16, 2021, the Plaintiffs, along with multiple defendants, including 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC, filed an *Expedited Joint Motion of Movants to Approve Settlement, Remand, Amend Caption, and Vacate Status Quo Order* (the "Settlement Motion," ECF No. 300). The Court stated at the hearing held September 28, 2021, that it would grant the Settlement Motion (see Text Entry, ECF No. 367), and a formal *Order of Court*

---

[15] "Creditor," was defined by the Uniform Fraudulent Conveyance Act as "a person having any Claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." See Baker at 636 (quoting Act of May 21, 1921, P.L. 1045, No. 379, s 1, 39 P.S. s 351).

granting the Settlement Motion was entered on September 29, 2021 (see ECF

No. 368). The Settlement Motion indicated that the parties thereto had agreed to

a "settlement, compromise, and final satisfaction of all claims, directly or

indirectly, arising out of the Adversary Action[.]" See Settlement Motion ¶ 7. Part

of the settlement resolution included amending the caption of the adversary

action to exclude the defendants identified in the Settlement Motion. See

Settlement Motion ¶ 10(b).

In the approved *Settlement Agreement* subject of the Settlement Motion,

720 Lincoln Highway, LLC and 201 Jefferson Street, LLC (identified as belonging

to the group of defendants known as the "Current Miller Defendants") conveyed

their respective interests in the Lincoln Highway Property and Jefferson Street

Property to the Plaintiff, Bankruptcy Estate. See *Settlement Agreement* ¶¶ 3-4,

ECF No. 300-1.

Significantly for our purposes, the *Settlement Agreement*[16] also contains a

"full and final release" of the Plaintiffs' claims against 720 Lincoln Highway, LLC

and 201 Jefferson Street, LLC.  The release states that:

> Plaintiffs, as of the Effective Date[17], individually and collectively will
> be deemed to have voluntarily, knowingly, unconditionally, and
> irrevocably, with specific and express intent, grant to each Current
> Miller Defendant and Proposed Excluded Defendant, as well as their
> owners, officers, employees, agents, assigns, successors, and/or
> heirs, a full and complete release and discharge of and from any and

---

[16] A fully-executed copy of the *Settlement Agreement* was filed on the docket at ECF No. 325-1.

[17] The "Effective Date" of the *Settlement Agreement* is the "date on which an Order of the
Bankruptcy Court approving this Agreement under Rule 9019 and any applicable non-
bankruptcy law becomes final and non-appealable." *Settlement Agreement* ¶ 2. The Settlement
Motion was approved by order dated September 29, 2021 and no appeal has been taken. The
fourteen (14) day period under Federal Rule of Bankruptcy Procedure 8002 for appealing the
order approving the Settlement Motion has passed.

all civil claims, actions, causes of action, damages, obligations, or liabilities, whether at law or in equity, matured or unmatured, vested or contingent, known or unknown, or now existing or arising hereafter that Plaintiffs, and/or their respective estates, have or may have against Current Miller Defendants and Proposed Excluded Defendants related to, alleged, or identified in the Adversary Action. Upon entry of a final, non-appealable Order of Court approving the instant Settlement Agreement, Plaintiffs shall discontinue and dismiss the Adversary Proceeding against the Current Miller Defendants and the Proposed Excluded Defendants with prejudice.

*Settlement Agreement* ¶ 15.

The *Settlement Agreement* further states at paragraph 17 that: "Neither the Current Miller Defendants nor the Proposed Excluded Defendants make any admission of liability in regards to any allegations made within the Adversary Action."

Thus, the gist of the *Settlement Agreement* as to 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC was their agreement to transfer to the Plaintiffs their interests in the Lincoln Highway Property and Jefferson Street Property without an admission of liability on the claims asserted in the Complaint in exchange for a full release of all claims related to the adversary action.

Since the Plaintiffs have relinquished any claims against 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC related to the adversary proceeding, they are no longer "creditors" of those entities under Pennsylvania's Uniform Voidable Transactions Act.   Thus, relief cannot be granted to the Plaintiffs thereunder. See Bell v. Wyatt, No. 3225 APRIL.TERM 2003, 2005 WL 1522015, at *2 (Pa. Com. Pl. June 23, 2005)(plaintiff did not have a "claim" for purposes of fraudulent conveyance action under Pennsylvania Uniform Fraudulent Transfer Act, where the only potential "claim" pled in plaintiff's complaint—a

confessed judgment plaintiff possessed at the time of case commencement—was thereafter stricken and dismissed with prejudice), aff'd, 903 A.2d 39 (Pa. Super. Ct. 2006). Simply put, the Plaintiffs no longer have standing to assert a claim under section 5104 of the PUVTA, as relief must be granted to a "creditor."

Accordingly, the Plaintiffs have failed to state a claim for which relief can be granted under section 5104(a)(1) of the Pennsylvania Uniform Voidable Transactions Act.[18]

### c.    Count X, Civil Conspiracy

In order to state a civil action for conspiracy, a complaint must allege: 1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage. McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa.Super.2000). Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." McKeeman, 751 A.2d at 660.

Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super 2004).

---

[18] Moreover, although not expressly raised in the Complaint, the Court notes that the Plaintiffs would likewise fail to state a claim for relief under 11 U.S.C. § 544(b). That section of the Bankruptcy Code permits a trustee to "avoid any transfer of an *interest of the debtor* in property or any obligation *incurred by the debtor* that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of [Title 11] or that is not allowable only under section 502(e) of [Title 11]." See 11 U.S.C. § 544(b)(1) (italics added). The term "debtor," as used in the Bankruptcy Code, is defined as the "person or municipality concerning which a case under this title has been commenced." See 11 U.S.C. § 101(13). *Sub judice*, the "debtor" is BG Petroleum, LLC. As discussed above, the entities which transferred the liens at issue and which incurred the attendant obligations were 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC. Thus, the liens and corresponding obligations were not that of the "debtor," and cannot be avoided under section 544(b)(1). In so finding, the Court is cognizant that all rights possessed by 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC in the Lincoln Highway Property and the Jefferson Street Property have recently been transferred to the Plaintiff, Estate of BG Petroleum, LLC, pursuant to the *Order of Court* dated September 29, 2021, and as such, those rights have become estate property. This has no bearing on the Court's analysis, however, as the transfer of the liens on January 9, 2020 occurred well before the September 29, 2021 *Order of Court*, at a time when the rights to the Lincoln Highway Property and Jefferson Street Property were not property of the estate. Accordingly, the granting of the liens by 720 Lincoln Highway, LLC and 201 Jefferson Street, LLC was not a conveyance of an interest of the bankruptcy estate when made.

As noted, civil conspiracy requires an underlying civil cause of action for a particular act. Where a plaintiff fails to plead or develop a separate underlying intentional or criminal act that can support a civil conspiracy claim, the claim fails. Id. See also Guy Chemical Co. v. Romaco S.p.A, No. 3:2006-96, 2009 WL 840386, at *16 (W.D. Pa. Mar. 27, 2009)("A claim for civil conspiracy can proceed only when there is a cause of action for an underlying act").

*Sub judice*, as it has been determined that the Plaintiffs have failed to sufficiently set forth the underlying civil causes of action under 11 U.S.C. §§ 548 and/or 549 and 12 Pa. Cons. Stat. § 5104(a)(1), the Plaintiffs' civil conspiracy claim cannot stand.

### d.   Count XI, Concerted Action

The viability of a claim for concerted action was recognized by the Supreme Court of Pennsylvania in Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169 (Pa. 1997). In Skipworth the Pennsylvania Supreme Court noted that the theory of a "concert of action claim" provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) ***does a tortious act*** in concert with the other or pursuant to a common design with him...." Skipworth, 690 A.2d at 174 (quoting Restatement (Second) of Torts, § 876) (emphasis and italics added).

Like a claim for civil conspiracy, a claim for concerted action requires an "underlying tortious act to be a valid cause of action." Guy Chemical Co., 2009 WL at *17. Since the Plaintiffs have failed to sufficiently set forth the underlying civil causes of action relating to the refinancings under 11 U.S.C. §§ 548 and/or

549 and 12 Pa. Cons. Stat. § 5104(a)(1), their concerted action claim must also be dismissed for failure to state a claim.

Under Count XI, the Plaintiffs assert that, in addition to the refinancings discussed above, CSB should be held liable for concerted action related to financing the initial purchases of properties owned by 4355 Business 220, LLC, 720 Lincoln Highway, LLC, and 201 Jefferson Street, LLC.  Again, without an actionable underlying tort, the claim cannot stand.

## IV.

For the foregoing reasons, the Court shall enter an order dismissing the Complaint as to CSB. However, the effectiveness of said order shall be stayed for a period of forty-five (45) days, during which time the Plaintiffs may file a motion for leave to amend the Complaint and provide an opportunity for response.


Dated: December 2, 2021

_____
Hon. Jeffery A. Deller
United States Bankruptcy Court


Case Administrator to Mail to:

Debtor
Matthew M. Herron, Esq.
Nicholas A. Miller, Esq.
Mitchell J. Rotbert, Esq.
Kate Deringer Sallie, Esq.
Lindsey E. Snavely, Esq.

FILED
12/2/21 11:55 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA